UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MICHAEL M. GREEN,
                Plaintiff,

vs.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,
                Defendant.

) Case No. 2:13-cv-00083-APG-CWH
)
) **REPORT AND RECOMMENDATION**
)
) (Motion for Reversal or Remand #16)
) (Cross-Motion to Affirm #18)

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Michael M. Green's application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. Ch. 7. Before the Court is Plaintiff's Motion for Reversal or Remand (#16)[1], filed on May 1, 2013, and the Commissioner's Cross-Motion to Affirm (#18), filed on May 9, 2013. This action was referred to the undersigned Magistrate Judge for a report of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4.

**BACKGROUND**

**I.    Procedural History**

On May 8, 2009 and May 11, 2009, Plaintiff filed applications for a period of disability and disability insurance benefits and supplemental security income alleging that he became disabled on October 1, 2008. (A.R. 106-120).[2] His claims were denied initially on September 18, 2009 and upon reconsideration on May 17, 2010. (A.R. 53-60, 65-70). On June 15, 2011, Plaintiff and his representative appeared for a hearing before Administrative Law Judge ("ALJ") Thomas J. Gaye. (A.R. 30-52). On July 7, 2011, the ALJ issued an unfavorable decision finding that the Plaintiff has

---

[1] Refers to the Court's docket number.

[2] A.R. refers to the Administrative Record in this matter. *See* Notice of Manual Filing (#12).

not been under a disability, as defined in the Social Security Act, from October 1, 2008, through the date of his decision. (A.R. 13-26). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on September 25, 2012. (A.R. 5-9). The Appeals Counsel granted Plaintiff's request for more time to file a civil action on December 18, 2012. (A.R. 1). On April 1, 2013, Plaintiff timely commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). *See* Compl. (#1-1).

## II.     The ALJ Decision

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920 and issued an unfavorable decision on July 7, 2011. (A.R. 13-26). At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009 and has not engaged in substantial gainful activity since October 1, 2008, the alleged onset date. (A.R. 18, Findings 1-2). At step two, the ALJ found that Plaintiff has the following severe impairments: cervical spine stenosis, spondylosis, degenerative disc disease of the cervical spine, osteoarthritis of the cervical spine, osteoarthritis of the right hand, lumbago, and asthma. (A.R. 18, Finding 3). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 19, Finding 4).

The ALJ found that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R 404.1567(a) and 416.967(a) with the following nonexertional limitations: never climb ladders, ropes or scaffolds, no more than occasionally climb ramps/stairs, stoop, kneel, crouch or crawl, no more than frequently balance, no more than limited reaching, avoid concentrated exposure to extreme cold, vibrations, fumes, gases, odors and avoid all exposure to hazards, and due to the side effects of medication the claimant is limited to simple repetitive tasks, moderately limited in his ability to understand and remember detailed instructions, and moderately limited in his ability to carry out detailed instructions. (A.R. 19, Finding 5). At step four, the ALJ found Plaintiff unable to perform his past relevant work as an auto mechanic/handyman and warehouse worker based on vocational expert testimony. (A.R. 24, Finding 6). At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform based on his age, education,

work experience, and residual functional capacity. (A.R. 24, Finding 10). In doing so, the ALJ defined Plaintiff as a younger individual age 18-44 on the alleged onset date, with at least a high school education, able to communicate in English, and found transferable skills not material to the determination of disability. (A.R. 24, Findings 7-9). The ALJ considered Medical-Vocational Rule 201.27, which provides a framework for finding Plaintiff not disabled, along with vocational expert testimony that an individual with the same residual functional capacity and vocational factors could perform work as a call out operator and surveillance systems monitor. (A.R. 25). Based on all of these findings, the ALJ found Plaintiff not disabled and denied his application for a period of disability and disability insurance benefits and supplemental security income.

## DISCUSSION

### I.     Judicial Standard of Review

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states, "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.* The Ninth Circuit reviews a decision of a District Court affirming, modifying or reversing a decision of the Commissioner *de novo*. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); see also *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson,* 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Flaten v. Sec'y of Health and Human Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are insufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

## II. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that

exists in the national economy. *Batson*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520 and 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability, then a determination will be made and no further evaluation is required. *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The first step requires the ALJ to determine whether the individual is currently engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b) and 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b) and 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits a claimant from performing basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521 and 416.921; Social Security Rulings ("SSR") 85-28, 96-3p, and 96-4p.[3] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appedix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925,

---

[3] SSR constitute SSA's official interpretations of the statute it administers and its regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

and 416.926.  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509 and 416.909), then a finding of disabled is made.  20 C.F.R. §§ 404.1520(h) and 416.920(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  *See* SSR 96-8p.  In making this finding, the ALJ must consider all the relevant evidence such as all the symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p and 96-7p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

The fourth step requires the ALJ to determine whether the individual has the RFC to perform his past relevant work ("PRW").  20 C.F.R. §§ 404.1520(f) and 416.920(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the individual to learn the job and performed as SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), and 416.965.  If the individual has the RFC to perform his past work, then a finding of not disabled is made.  If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his residual functional capacity, age, education, and work experience.  20 C.F.R. §§ 404.1520(g) and 416.920(g).  If the claimant is able to do other work, then a finding of not

disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

### III. Analysis and Findings

Plaintiff seeks reversal or remand of the ALJ's decision for two reasons: (1) the ALJ impermissibly rejected the treating physician opinion by Abhinav Sinha, M.D. ("Dr. Sinha") and (2) the ALJ's identification of the number of available jobs at step five did not satisfy the Commissioner's burden.

#### A. Treating Physician Opinion

Plaintiff contends that the ALJ erred in rejecting the treating physician opinion of Dr. Sinha and therefore, the finding of not disabled is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred in mistaking Dr. Sinha's opinion for that of a "Dr. Ashers," whom the Plaintiff neither recognized nor knew, and failing to characterize it as a treating physician opinion. Further, Plaintiff alleges that although the ALJ rejected the opinion as inconsistent with treatment notes, that was not a reasonable interpretation of the notes describing Plaintiff as functional. In response, the Commissioner contends that it was harmless error to mistake Dr. Sinha's opinion for Dr. Ashers because the ALJ's reasons for rejecting the opinion are supported by substantial evidence. In fact, the Commissioner contends that the ALJ properly rejected Dr. Sinha's opinion because it was conclusory, inconsistent with his treatment records, and based on Plaintiff's subjective reports of symptoms that were found not credible.

In general, a treating physician's opinion is entitled to more weight than a non-treating physician's opinion because a treating physician is "employed to cure and has a greater opportunity to know and observe the patient as an individual." *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir.1993); *see also* 20 C.F.R. §§ 404.1527 and 416.927. Accordingly, a treating physician's opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with other substantial evidence in the record. *See* SSR

96-2p. If the ALJ declines to award a treating physician's opinion controlling weight and it is not contradicted by another physician, then the ALJ must give clear and convincing reasons for rejecting the uncontradicted opinion. *Thomas*, 278 F.3d at 957. If the ALJ declines to give controlling weight and the treating physician's opinion is contradicted, then the ALJ must provide "specific and legitimate reasons" supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (relying on *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.2007) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725(citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

However, a treating physician's opinion is not necessarily conclusive on an individual's physical condition or the ultimate issue of disability. *See Magallanes*, 881 F.2d at 751. Additionally, an ALJ is not required to accept a treating physician opinion that is brief, conclusory, and inadequately supported by clinical findings or the record as a whole. *See Batson v. Comm'r of SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004). Nevertheless, the ALJ must weigh a treating physician's opinion using the factors provided by 20 C.F.R. §§ 404.1527 and 416.927 and provide good reasons for the weight given. SSR 96-2p.

The Court finds that the ALJ's rejection of Dr. Sinha's August 5, 2010 opinion is supported by substantial evidence. The Commissioner concedes that the August 5, 2010 opinion by Dr. Sinha is incorrectly labeled in the Administrative Record as being authored by Dr. Ashers. Nevertheless, the Court finds this to be a harmless error for several reasons. First, the ALJ specifically addressed Dr. Sinha's opinion that Plaintiff has the ability to function at less than the sedentary level in the opinion evidence assessment. In doing so, the ALJ cited to the representative brief that correctly labels the treating physician opinion as being authored by Dr. Sinha. (A.R. 180). Therefore, despite the confusion regarding who authored the August 5, 2010 opinion, it is clear that the ALJ considered the limitations opined by Dr. Sinha in the mistakenly labeled opinion when determining what RFC Plaintiff should be assigned.

Second, the ALJ justified his rejection of Dr. Sinha's opinion, including the opinion

8

mistakenly labeled as Dr. Ashers' opinion, as conclusory, not supported by identifiable evidence, and inconsistent with Dr. Sinha's treatment records that describe higher levels of functioning. (A.R. 9). The use of checkbox forms, such as that used by Dr. Sinha for his August 5, 2010 opinion, is a common form of evidence in these cases. However, the ALJ highlighted the fact that the form did not cite to any medical records or objective findings. The Ninth Circuit has found that an ALJ does not need to accept a treating physician's opinion that is unsupported by clinical findings. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also Thomas*, 278 F.3d at 957. Dr. Sinha's August 5, 2010 opinion does not cite any rationale, clinical observations, much less cite to treatment notes that contain objective evidence. As a result, the ALJ's reasoning that the opinion is conclusory and not supported by identifiable evidence is sufficient for rejecting it.

In addition, the ALJ noted that Dr. Sinha's treatment records were inconsistent with such a restrictive RFC. For example, treatment records dated September 2, 2010, about a month after the opinion at issue was signed, Dr. Sinha notes that Plaintiff is functional with medication. (A.R. 271). This observation appears in Dr. Sinha's treatment notes dated September through November 2008, February through December 2009, June through July 2010, and April 29, 2011. (A.R. 233-36, 238-48, 273-75, 278-80). The outlier appears to be Dr. Sinha's treatment notes dated August 5, 2010, which was the day he authored the opinion that Plaintiff can do less than sedentary work. (A.R. 272). As a result, the ALJ could take into account the longitudinal picture provided by Dr. Sinha's treatment notes and find that the opinion dated on August 5, 2010 is inconsistent with past and subsequent treatment.[4] Therefore, the Court finds the ALJ's explanation that the form did not cite supporting evidence and Dr. Sinha's treatment notes are inconsistent with a more restrictive RFC provide "good reasons," SSR 96-2p, and "specific and legitimate reasons" supported by substantial evidence in the record to satisfy the requisite legal standards.

---

[4] Plaintiff contends that because there is no definition of "functional" the ALJ lacked foundation to rely on it as a reason for discounting Dr. Sinha's opinion. The Court's review is limited to whether the Commissioner's findings are supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Accordingly, the Court will not second guess the ALJ's reasonable determination that describing Plaintiff as functional in treatment notes is inconsistent with describing Plaintiff as disabled in an RFC assessment.

Third, Dr. Sinha's opinion conflicts with the less restrictive opinions of one examining physician and two non-examining physicians. At the initial level, a state agency medical consultant, who constitutes a non-examining source, opined that Plaintiff is capable of a reduced sedentary RFC with postural, manipulative, and environmental limitations. (A.R. 222-229). The ALJ assigned this opinion the most weight for being consistent with the medical evidence of record and adopted most of the opinion into the RFC finding with the addition of several mental limitations. After the initial determination, a consultative examiner, who constitutes an examining source, opined that Plaintiff is capable of performing a reduced medium RFC and noted no neurological or mechanical deficits associated with Plaintiff's complaints of low back and hand pain. (A.R. 251-257). The ALJ found that this opinion did not take into account the limitations related to Plaintiff's asthma and declined to adopt the medium exertional level suggested in the opinion in favor of a more restrictive sedentary exertional level limitation. At the reconsideration level, a state agency medical consultant, who constitutes a non-examining physician, opined that Plaintiff is capable of performing a medium RFC based on consideration of the medical records and the consultative examiner's report. (A.R. 258-265). The ALJ afforded this opinion little weight for being inconsistent with additional medical evidence.

Accordingly, there are conflicting medical opinions in the record. All three of the non-treating source opinions support a less restrictive RFC than what the ALJ assigned to Plaintiff. Only Dr. Sinha's opinion supports a more restrictive RFC. Although Dr. Sinha treated Plaintiff for two years prior to authoring his opinion, the ALJ had the benefit of considering the medical evidence of record as a whole and specifically, the opinions provided by physicians at several stages of the review process. As a result, the ALJ's determination to not afford controlling weight to Dr. Sinha's less than sedentary RFC is supported by the other opinion evidence and objective findings from the consultative examiner's report. Given that the consultative examiner formed a contrary opinion based on objective findings that are independent to Dr. Sinha's findings, the consultative examiner's opinion that finds Plaintiff capable of more than Dr. Sinha's less than sedentary RFC is substantial evidence that supports the ALJ's rejection of Dr. Sinha's opinion. *See Magallanes*, 881 F.2d at 751.

Therefore, the ALJ's mistake of attributing Dr. Sinha's August 5, 2010 opinion to Dr. Ashers is a harmless error. He considered the limitations suggested by the opinion despite mischaracterizing

it as not a treating physician opinion. The ALJ also provided sufficient reasons for not affording it controlling weight including not supported by identifiable medical evidence and inconsistent with Dr. Sinha's treatment notes. Additionally, the ALJ had substantial evidence in the form of conflicting opinion evidence to support finding Plaintiff capable of performing a less restrictive RFC than that contained in Dr. Sinha's August 5, 2010 opinion.

### B.    Step Five Finding

Plaintiff contends that the ALJ erred in finding that call out operator and surveillance systems monitor jobs exist in significant numbers in the national economy that he can perform. In particular, Plaintiff asserts that the Commissioner cannot rely on vocational expert testimony citing the number of jobs available in the national economy only, but rather, must further specify the number of jobs available in the region or several regions of the country. In contrast, the Commissioner contends that it is not necessary to cite the availability of specific jobs in the region in which Plaintiff lives or several regions of the country. In doing so, the Commissioner contends that it is the existence of jobs rather than where they are located that is relevant at step five.

The Court notes that the Commissioner bears the burden of providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42. Work exists in the national economy when there are "a significant number of jobs (in one or more occupations) having requirements" that the individual is "able to meet" considering his "physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b). In fact, the Social Security Act specifies that an individual shall be found disabled only if he is unable to "engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). As a result, the significant number of jobs can either be in the region where the individual resides or in several regions of the country. *Id.*

Moreover, the Supreme Court has noted that work exists in the national economy when both (1) the work's requirements can be met by the individual with his physical or mental abilities and vocational qualifications, and (2) the work exists in significant numbers either in the region where the individual lives or in several other regions of the country. *Barnhart*, 540 U.S. at 23-24 (citing 42

U.S.C. § 423(d)(2)(A) and 20 C.F.R. § 404.1566(a)-(b)). The Supreme Court's definition of "work existing in the national economy" is further bolstered by SSR 83-14 that states, "whenever a vocational resource is used and an individual is found to be not disabled, the determination or decision will include (1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country." Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where a plaintiff lives are not considered "work which exists in the national economy." 20 C.F.R. § 404.1566(a).

Here, the vocational expert testified that there were 32,000 call out operator and surveillance systems monitor jobs nationally that someone with Plaintiff's RFC and vocational factors could perform. (A.R. 50). However, she failed to identify the availability of those jobs in the region in which Plaintiff resides or identify the number of those jobs available in several other regions of the country. The Commissioner contends that the national number is sufficient evidence to support the step five finding because that means that jobs exists in several regions of the country. The Court is not convinced that this is consistent with Ninth Circuit precedent or SSR 83-14.

First, if the vocational expert is only required to provide national numbers, then the language regarding number of available jobs in the region in which Plaintiff resides or in several regions of the country would be meaningless. As noted above, both Congress and SSA expressly mentions that work must exist in significant numbers either in the region where the individual lives or several regions of the country. 42 U.S.C. § 423(d)(2)(A); SSR 83-14. The Commissioner cites no authority to support the assumption that the national number provides sufficient information to conclude that there are a significant number of jobs in either of those two categories. In fact, the Ninth Circuit recently noted that a national job availability figure cannot be considered as a "stand-alone figure." *Beltran v. Astrue*, 700 F.3d 386 (9th Cir. 2012). Although the national number of 32,000 call out operator and surveillance systems monitor jobs is a significant number considered as a whole, it is unclear whether that number, when distributed over several regions of the country, would still be significant. The Ninth Circuit has not developed a floor to define "significant number," but the issue here is that the Court does not have any information to determine whether any of the 32,000 jobs exist in the region in which Plaintiff resides or in several regions of the country. As a result, the Court

cannot determine whether these jobs are rare or generally unavailable under the two regional measures. *See Walker v. Mathews*, 546 F.2d 814, 820 (9th Cir. 1976) (finding ALJ erred in finding a significant number of jobs where the jobs were very rare or generally unavailable to the claimant).

Second, the Congress has determined under 42 U.S.C. § 423(d)(2) that what is essential is the existence of jobs, not the hiring practices of employers or whether an individual could obtain the job if he applied. Accordingly, arguments that step five is not supported because Plaintiff would not be able to apply for or obtain the cited call out operator and surveillance systems monitoring jobs would be unpersuasive. *See Martinez v. Heckler*, 807 F.2d 771 (9th Cir. 1986). However, Plaintiff is not challenging whether or not he could obtain a call out operator or surveillance systems monitor job. Instead, Plaintiff asserts that he is unable to determine whether a significant number of jobs exist under either definition provided by 42 U.S.C. § 423(d)(2)(A) that specify regional references.

As previously noted, it is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.* The Commissioner requests that the Court speculate that the national number of jobs available is significant enough that there must be enough jobs in the region where Plaintiff resides or several regions. Moreover, the Commissioner has not cited any authority and the Court found no authority supporting the proposition that the national number is sufficient to carry the step five burden when no number is cited for the region in which Plaintiff resides or several regions in the country. The Court declines to create new law on this issue by finding that only a national number is needed.

Therefore, the Court finds that the Commissioner failed to carry its burden at step five. This is not a harmless error because the Court is left with insufficient evidence to determine whether the step five finding of not disabled is supported. As such, this defect warrants correction by additional vocational expert testimony regarding the number of jobs available in the region in which Plaintiff resides or in several regions of the country that someone with Plaintiff's RFC and vocational factors could perform.

13

### IV.   Conclusion

Judicial review of the Commissioner's decision to deny disability benefits is limited to determining whether the decision is free from legal error and supported by substantial evidence.  It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record, and resolve conflicts in the evidence including differences of opinion.  Having reviewed the Administrative Record as a whole and weighed the evidence that supports and detracts from the conclusion, the Court finds that the ALJ's decision does not articulate reasons for findings that satisfy the requisite legal standards.  Specifically, the defect at step five warrants correction upon remand.

Based on the foregoing and good cause appearing therefore,

### RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal or Remand (#16) be **granted subject to the modification that it be remanded for further proceedings** consistent with the terms of this report and recommendation.

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion to Affirm (#18) be **denied**.

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.,* 708 F.2d 452, 454 (9th Cir. 1983).

Dated this 25th day of October, 2013.

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**